IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHARLES D. JOHNSTON, | : |
| | : |
| Plaintiff | : |
| | : |
| VS. | : |
| | :    **5 : 07-CV-292 (CAR)** |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

**RECOMMENDATION**

The plaintiff herein filed this Social Security appeal on July 26, 2007, challenging the Commissioner's final decision denying his application for disability benefits. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

*Background*

The plaintiff filed applications for disability benefits in April 2001, alleging disability since October 20, 1997, due to back, shoulder and arm impairments and/or pain. Initially denied at the administrative levels, the plaintiff's claim was remanded by the Appeals Council for further consideration on August 17, 2005. Subsequent hearings were held before an ALJ in January and September 2006, with the ALJ ultimately issuing a finding of no disability. The Appeals Council denied review, and the plaintiff then filed this appeal, arguing that the ALJ improperly rejected the opinions of treating physicians and failed to consider the side effects of his medications.

At the time of the most recent hearing before the ALJ, the plaintiff was 49 years of age with past relevant work experience as a sheet metal worker, iron worker and welder. The

plaintiff's last grade of completed schooling was the ninth grade.  The ALJ found that the plaintiff had impairments in the form of degenerative disc disease, diabetes mellitus, status post left biceps tear and repair, possible right rotator cuff impingement, an abdominal hernia, borderline intellectual functioning, possible depression, substance abuse disorder, and obesity. The ALJ found that the plaintiff had the residual functional capacity to perform light work with a sit/stand option.  Although the plaintiff could not return to his past relevant work, which had been medium and heavy exertional levels, the hearing testimony from a vocational expert established that the plaintiff could perform other work which existed in significant numbers in the economy, considering his age, education, and residual functional capacity.  The vocational expert testified that the plaintiff could perform jobs such as bench assembler, assembler of small parts, and assembler of switch boxes.  Plaintiff was therefore determined to be "not disabled".

*Discussion*

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against

the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at 1145-1146.

*Treating physicians' opinions*

The plaintiff argues that the ALJ improperly discounted the opinions of treating physicians Peters and Eilers, as well as that of consultative examiner Dr. Fried.  Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner."  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  20 C.F.R. § 404.1527(e)(1).

In general, the opinions of treating physicians are given substantial or considerable weight unless good cause is shown to the contrary.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Good cause has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.  We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted).  As the Lewis court noted, "[w]e are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition."  Id.

3

Both Dr. Peters and Dr. Eilers completed residual functional capacity forms on the plaintiff's condition, in which they opined that the plaintiff was unable to maintain substantial gainful activity. The ALJ "[did] not afford the views as expressed by Dr. Peters and Dr. Eilers on counsel's forms controlling weight. Nonetheless, I have afforded these physicians' views appropriate weight in constructing the claimant's residual functional capacity." R. at 27. The ALJ noted that Dr. Peters had seen the plaintiff only two (2) times before issuing his residual functional capacity assessment, that his assessment seemed to have been based entirely on the plaintiff's complaints and completed by plaintiff's attorney. In regard to Dr. Eilers, the ALJ noted numerous conflicts between his residual functional capacity assessment and the treatment notes, including a notation of "lumbar radiculopathy due to disc herniations" when Dr. Eilers' treatment notes indicated that the plaintiff had no radiculopathy and no herniated discs.

The plaintiff argues that the ALJ, while correctly acknowledging that Dr. Peters issued an opinion of disability after seeing the plaintiff only twice, failed to note that Dr. Peters based his opinion on the treatment records from prior treating physicians Green and Barnes. However, as the Commissioner points out, neither Dr. Green's nor Dr. Barnes' treatment notes and history provide support for a conclusion of disability. Dr. Green apparently lost his medical license in 2003 after being indicted for felony murder in the overdose deaths of several habitual drug abusers to whom he had provided narcotic medications. Additionally, the ALJ noted that Dr. Green's treatment notes reflected a reporting of the same information every month, while he continued to provide the plaintiff with "large amounts of narcotic medications". R. at 18. In regard to Dr. Barnes, his last treatment note for the plaintiff in February 1999, showed that the plaintiff was "able to go back to his previous job with modifications outlined by FCE Piedmont

4

Industrial Center". R. at 437.

In regard to Dr. Eilers, the plaintiff simply states that "the ALJ dismisses that evidence as well claiming that much of it was 'wholly detached from the underlying evidence' and was 'chock-full of disinformation'. As with Dr. Peters' opinion, the ALJ made no effort to answer any of his questions by directing them to Dr. Eilers." Plaintiff's brief at p. 13. As the Commissioner points out, however, much of Dr. Eilers' opinion of disability is contradicted by his own treatment notes and findings, and the plaintiff has failed to point to any specific findings from Dr. Eilers that merit different consideration by the ALJ.

The plaintiff also argues that the ALJ failed to afford the appropriate weight to the opinion issued by consultative examiner Dr. Fried. The ALJ noted Dr. Fried's orthopedic consultative evaluation of the plaintiff in May 2006, and certain of his findings are echoed in the ALJ's ultimate finding on the plaintiff's residual functional capacity, such as slightly reduced strength in plaintiff's right shoulder and right arm and modestly reduced range of motion. However, the ALJ noted that Dr. Fried's assessment of the plaintiff's residual functional capacity as limited to sedentary work was at odds with his evaluation findings, which included findings of excellent grip strength and normal use of hands and fingers, while his functional capacity assessment inexplicably rested in part on a finding that the plaintiff "drops things easily". As with the other physicians at issue, the ALJ was not required to re-contact Dr. Fried, inasmuch as sufficient evidence was in the record to allow a determination as to plaintiff's disability status.

In regard to the plaintiff's contention that the ALJ improperly discounted evidence regarding medication side effects, as the Commissioner argues, the plaintiff failed to put forth sufficient evidence of any side effects suffered from his medications, despite evidence that the

plaintiff obtained prescription narcotics from multiple treating sources during the time period at issue. The plaintiff merely points to one notation from Dr. Eilers regarding "mental dullness secondary to meds", and one comment from consultative examiner Dr. Fried that plaintiff was "on medication which may interfere with alertness". As the ALJ noted, neither Dr. Eilers' treatment notes nor the plaintiff himself provided any indication of side effects from medications, and Dr. Fried's comment merely indicated a possibility, otherwise unconfirmed, of medication side effects. The ALJ's treatment of the medication side effects issue is supported by substantial evidence.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 19th day of February, 2009.

/s/ ***Richard L. Hodge***
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb